IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ERIC W., | ) |
|     Plaintiff, | ) ) ) |
| v. | ) No. 19 C 698 ) ) Magistrate Judge Gabriel A. Fuentes |
| ANDREW M. SAUL, Commissioner of Social Security,[1] | ) ) ) |
|     Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER[2]

Plaintiff, Eric W.,[3] applied for Social Security Income ("SSI") benefits on December 4, 2014, when he was 53 years old. (R. 247.) After Plaintiff's applications were denied initially and on reconsideration, he testified at a hearing before an Administrative Law Judge ("ALJ"), after which the ALJ issued a written opinion finding Plaintiff was not disabled under the Social Security Act. (R. 13.) On November 30, 2018, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (R. 1), making the ALJ's decision the final decision of the Commissioner. *See*

---

[1] The Court substitutes Andrew M. Saul for his predecessor, Nancy A. Berryhill, as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).

[2] On March 12, 2019, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to a United States Magistrate Judge for all proceedings, including entry of final judgment. (D.E. 10.) On May 31, 2019, this case was reassigned to this Court for all proceedings. (D.E. 14.)

[3] The Court in this opinion is referring to Plaintiff by his first name and first initial of his last name in compliance with Internal Operating Procedure No. 22 of this Court. IOP 22 presumably is intended to protect the privacy of plaintiffs who bring matters in this Court seeking judicial review under the Social Security Act. The Court notes that suppressing the names of litigants is an extraordinary step ordinarily reserved for protecting the identities of children, sexual assault victims, and other particularly vulnerable parties. *Doe v. Vill. of Deerfield*, 819 F.3d 372, 377 (7th Cir. 2016). Allowing a litigant to proceed anonymously "runs contrary to the rights of the public to have open judicial proceedings and to know who is using court facilities and procedures funded by public taxes." *Id*. A party wishing to proceed anonymously "must demonstrate 'exceptional circumstances' that outweigh both the public policy in favor of identified parties and the prejudice to the opposing party that would result from anonymity." *Id*., citing *Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 872 (7th Cir. 1997). Under IOP 22, both parties are absolved of making such a showing, and it is not clear whether any party could make that showing in this matter. In any event, the Court is abiding by IOP 22 subject to the Court's concerns as stated.

*Prater v. Saul*, 947 F.3d 479, 481 (7th Cir. 2020). Plaintiff now seeks remand of the Commissioner's decision (D.E. 15), and the Commissioner has moved to affirm.[4] (D.E. 22.)

## I. Administrative Record

Plaintiff, who has no high school diploma or GED, has not worked since he was fired from his job as a grocery stocker in 2005 for "making too many mistakes." (R. 39, 45, 255-56.) In July 2012, Plaintiff began treatment with psychiatrist Milton Daugherty, M.D., and mental health therapist Michelle Kemp, M.A. Dr. Daugherty diagnosed Plaintiff with major depressive disorder with anxiety and panic attacks and a learning disability and assigned him a Global Assessment of Functioning ("GAF") score of 40, signaling "severely" impaired functioning.[5] (R. 522.) Dr. Daugherty prescribed Wellbutrin (antidepressant) and Xanax (sedative), adding Trazodone (antidepressant and sedative) in November 2012 and replacing Xanax with Buspar (anti-anxiety) in 2013. (R. 523-24, 540.) In March 2014, Dr. Daugherty noted Plaintiff was "becoming increasingly more depressed and withdrawn," and "more paranoid around people." (R. 542.)

On April 11, 2014, Ms. Kemp filled out a mental residual functional capacity ("RFC") form. She indicated Plaintiff was markedly limited in all areas of understanding, memory, social interaction and adaptation, and markedly limited in six out of the eight areas of concentration and persistence. (R. 531-33.) She concluded Plaintiff had "cognitive limitations that make work related tasks difficult for [him] to perform," including reading written materials and following directions. (R. 534.)

---

[4] Plaintiff argues that he is entitled to remand because the ALJ erred in addressing his mental impairments. He does not contest the ALJ's decision that he had no physical limitations from his HIV status or his right wrist impairment. Accordingly, the Court's opinion focuses on Plaintiff's mental health issues.

[5] *See* Am. Psych. Assoc. Diagnostic & Statistical Manual of Mental Disorders at 34 (4th ed. rev. 2000) (DSM-IV). The DSM-V, the latest version of the Diagnostic and Statistical Manual of Mental Disorders, has since replaced the GAF with another metric. *See Walker v. Berryhill*, 900 F.3d 479, 480 (7th Cir. 2018).

On September 5, 2014, psychologist Nicolette Puntini, Ph.D., P.C., evaluated Plaintiff. (R. 432.) During testing, Plaintiff "manifested concentration impairments" and "was easily distracted by irrelevant stimuli," and Dr. Puntini had "to redirect [Plaintiff's] attention to the task at hand." (R. 435.) Dr. Puntini believed Plaintiff tried his best and that the test results were "an accurate representative of his actual level of his psychological functioning." (R. 439.) The testing showed Plaintiff's overall intellectual functioning, verbal comprehension, nonverbal reasoning abilities and memory (visual, immediate and delayed memory) fell within "the extremely low range." (R. 439-42.) Dr. Puntini opined Plaintiff "would have difficulty maintaining concentration, persistence, and pace on routine work demands due to the disruptive effects of severe anxiety," and "[h]is low tolerance for frustration, suspiciousness, and paranoid ideation would interfere with his ability to maintain occupational relationships for any appreciable length of time." (R. 444.) Dr. Puntini concluded Plaintiff met listings 12.04, 12.05, and 12.06 for affective disorders, intellectual disability, and anxiety-related disorders, and that he had moderate restriction of activities of daily living ("ADLs") and marked difficulties in social functioning and maintaining concentration, persistence or pace. (R. 419, 427.)

In April 2015, Plaintiff submitted a function report in which he described having trouble reading and staying focused and getting aggravated that he cannot understand or express things. (R. 288.) Plaintiff noted that he spent a lot of time in bed and watching TV because he had no energy. (R. 289-90.) He did not like spending time with others; he stayed home with his fiancée and son, with the blinds closed so no one could see in, although sometimes relatives visited. (R. 292-93.) His fiancée or mother did all the chores and shopping. (R. 290-91.)

That month, Dr. Daugherty observed that although Plaintiff was oriented with fair insight, judgment and memory, he had a hostile rapport, disheveled appearance, depressed and anxious

3

affect and mood, impoverished speech, and disorganized and preoccupied thought process. (R. 551.) Dr. Daugherty assessed Plaintiff's GAF at 45, indicating serious impairment,[6] and continued prescribing Plaintiff Wellbutrin, Buspar and Trazodone. (*Id.*) In June 2015, Dr. Daugherty reported that Plaintiff "continues to be depressed and loosing [sic] confidence in himself to do anything and is becoming more suspicious of people and more withdrawn and isolating himself." (R. 553.) The results of Plaintiff's mental status exam were similar to his April exam, except Plaintiff had poor insight, evasive rapport, coherent speech with loose associations, and he was appropriately dressed. (R. 553.) Dr. Daugherty assessed Plaintiff's GAF at 45-50. (R. 554.)

On July 1, 2015, Plaintiff was examined by clinical psychologist Michael E. Stone, Psy.D., for purposes of his disability claim. Dr. Stone found Plaintiff was fully oriented with "adequate" judgment and a general fund of knowledge, but he had a depressed and anxious affect, an agitated and depressed mood, and an impaired ability to perform calculations and interpret proverbs. (R. 498-500.) Later that month, a non-examining state agency expert opined Plaintiff had severe anxiety and affective disorders that did not meet a Listing. (R. 127.) The opinion stated that Plaintiff had mild restriction in ADLs and moderate difficulties in social functioning and maintaining concentration, persistence or pace. (*Id.*) The opinion recognized that Plaintiff had limitations in understanding and memory, difficulty with abstraction and calculation and sustained concentration and persistence limitations, but the opinion noted that Dr. Stone "did not report problems with attentional focus during the interview," and Plaintiff communicated and "interacted appropriately" with him. (R. 130-31.) The state agency expert opined Plaintiff was "mentally capable of performing unskilled work in a low pressure work environment where he does not have to interact with the general public." (R. 131.)

---

[6] *See* DSM-IV at 34 (GAF range of 41-50 signals "serious" impairment).

4

In October 2015, the results of Dr. Daugherty's mental status examination of Plaintiff were similar to those he recorded earlier that year; Plaintiff was fully oriented with fair insight, judgment and memory, but he had a depressed, anxious and angry mood, pressured speech and restless psychomotor activity. (R. 548.) Dr. Daugherty assessed Plaintiff with a GAF of 45-50 and noted that his medications (Wellbutrin, Buspar and Trazodone) caused sedation. (R. 547, 549.) That month, Plaintiff submitted another function report in which he noted that he no longer drove because other drivers upset him too much, and he no longer cooked because he had gotten distracted and let food burn on the stove, causing smoke damage. (R. 317-21.) In November 2015, the state agency affirmed its July 2015 findings, stating (incorrectly) that Plaintiff "has neither sought nor received psychiatric treatment" since its initial decision. (R. 141, 145.)

In January, July and October 2016, Dr. Daugherty assessed Plaintiff's mental status exam as essentially unchanged from October 2015. (R. 555-56, 558-62.) Dr. Daugherty further wrote that Plaintiff "continues to be depressed, anxious, withdrawn, isolates himself, and fearful of going out alone and not being able to function" and "not really able to care for his needs alone . . ." (R. 561-62.) On December 16, 2016, Plaintiff and his fiancée told Dr. Daugherty that Plaintiff's was getting more frustrated, depressed and hopeless. (R. 564.) Plaintiff's psychiatric examination again showed mostly the same results. (R. 565-66.)

On July 28, 2017, Plaintiff's mental status exam remained mostly unchanged. (R. 614.) Dr. Daugherty opined that Plaintiff's psychiatric condition was deteriorating and he was feeling more depressed, and Dr. Daugherty assessed him with a GAF of 40. (R. 614-15.) On August 25, 2017, Plaintiff's fiancée filled out a function report describing Plaintiff as jittery, short-tempered and unable to concentrate, and stating that he did not like to be around people and did almost nothing all day. (R. 358-60.) Lastly, on September 12, 2017, Plaintiff's testified at his hearing before the

5

ALJ that all he does during the day is watch TV, eat and bathe; he felt uncomfortable around other people; and did not help his teenage son or fiancée around the house. (R. 39, 44, 47.)

## II.     ALJ's Decision

On December 21, 2017, the ALJ issued a written opinion finding Plaintiff was not under a disability since the date his application was filed, and denying his application for benefits.[7] (R. 15.) The ALJ found Plaintiff had the severe mental impairments of depressive disorder, anxiety related disorder and intellectual disorder, but that none of them met a listing. (*Id*.) The ALJ found Plaintiff had moderate limitations in understanding, remembering or applying information, interacting with others, and concentrating, persisting or maintaining pace, and assigned him an RFC to perform medium work with additional mental limitations. (R. 16-17.)

The ALJ stated that these limitations were consistent with "the conservative mental health treatment of record, including medication management," Plaintiff's "considerable" ADLs, "including using public transportation, living with his fiancée and son, [ ] watching TV," and dressing and bathing himself. (R. 16.) The ALJ listed examinations showing Plaintiff with full orientation, "cooperative with appropriate mood and affect," "relevant thought content and fair memory, insight and judgment," "no more than moderately impaired functioning" and "capable of performing simple math"; the ALJ described these as "the limited objective findings of record." (R. 19-20.)

The ALJ gave "little weight" to opinions he found inconsistent with the aforementioned ADLs, "conservative treatment" and "limited objective findings," including Ms. Kemp's opinion, Dr. Puntini's opinion and treatment notes assessing Plaintiff GAF scores between 40 and 50.[8] (R.

---

[7] Although Plaintiff alleged his disability began on July 30, 2005 (R. 247), SSI benefits are not payable until the month after the application's filing date. 20 C.F.R. § 416.335.

[8] The ALJ further found that Ms. Kemp's opinion was "that of a non-accepted medical source." (R. 19.)

6

19.) In giving little weight to Plaintiff's GAF scores, the ALJ did not mention that Dr. Daugherty, Plaintiff's treating psychiatrist, assigned them. (*Id.*) The ALJ just mentioned Dr. Daugherty as a treating source who "consistently diagnosed the claimant with only mild intellectual deficit disorder." (R. 20.)

The ALJ also found that Plaintiff's ADLs, "conservative treatment" and "limited objective findings" undermined his testimony and his fiancée's function report describing more severe symptoms and limitations. (R. 19-20.) Further, the ALJ found Plaintiff's testimony was "not entirely consistent" with his "presentation at the hearing," during which he interacted and responded "appropriately and with adequate memory and concentration." (R. 17-18.)

By contrast, the ALJ gave "great weight" to the opinions of the non-examining state agency medical consultants, which he found consistent with "the conservative mental health treatment of record," "the limited objective findings" and Plaintiff's ADLs, as well as with the RFC he assigned to Plaintiff. (R. 20-21.) The ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform with that RFC. (*Id.*)

### III.  Analysis

The Court's review of the ALJ's decision "is deferential; we will not reweigh the evidence or substitute our judgment for that of the ALJ." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017). "The ALJ's decision will be upheld if supported by substantial evidence, which means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019) (internal citations and quotations omitted). "An ALJ need not address every piece of evidence," but must "build an accurate and logical bridge" between the evidence and his conclusion. *Lanigan v. Berryhill*, 865 F.3d 558, 563 (7th Cir. 2017).

In this case, the Court agrees with Plaintiff that the ALJ's decision was not supported by substantial evidence due to multiple errors in assessing Plaintiff's mental impairments.

### A. The ALJ Ignored and Mischaracterized Medical Evidence

Like Plaintiff, the Court is troubled by the ALJ's description of the objective findings as limited. This is a mischaracterization based on the ALJ's failure to consider all of the relevant evidence.

It is well-settled that ALJs "cannot simply cherry-pick facts supporting a finding of non-disability while ignoring evidence that points to a disability finding." *Reinaas v. Saul*, 953 F.3d 461, 466 (7th Cir. 2020). However, that is what the ALJ did here. The ALJ repeatedly highlighted portions of Dr. Daugherty's records showing Plaintiff was fully oriented and cooperative, had appropriate mood and affect, and had fair memory, insight and judgment, calling these findings "limited." But, as Plaintiff points out, the ALJ ignored that "Dr. Daugherty made objective findings of abnormal mood, affect, speech, thought process, and/or psychomotor activity at every visit since April 2015" (D.E. 15: Pl.'s Br. at 1-2), casting doubt on the ALJ's characterization of Dr. Daugherty's findings as "limited." In *Gerstner v. Berryhill*, the Seventh Circuit remanded where the ALJ similarly "fixated on select portions" of the treating doctor's treatment notes, such as "normal affect" and "no impaired thoughts" but "ignored the negative findings," such as dysthymic mood, depression, and problems sleeping and concentrating. 879 F.3d 257, 261-62 (7th Cir. 2018).

In addition, relying on his selective reading of Dr. Daugherty's treatment notes, the ALJ improperly dismissed Dr. Daugherty's GAF assessments indicating Plaintiff was severely or seriously impaired as inconsistent with the mischaracterized "limited" examination findings. Although "the latest version of the Diagnostic and Statistical Manual of Mental Disorders, has abandoned the GAF . . . the Social Security Administration still instructs ALJs to treat GAF scores

as medical-opinion evidence." *Gerstner*, 879 F.3d at 263 n.1. The ALJ's failure to discuss Dr. Daugherty's abnormal findings, such as depressed and anxious mood, pressured speech, psychomotor restlessness, loose associations of thought and low GAF scores, requires remand. "The ALJ's analysis strikes us as impermissible cherry-picking—highlighting facts that support a finding of non-disability while ignoring evidence to the contrary." *Martin v. Saul*, 950 F.3d 369, 375 (7th Cir. 2020).

### B. The ALJ Failed to Properly Weigh Expert Medical Opinions

In addition, the Court agrees with Plaintiff that the ALJ erred by failing to acknowledge that these regularly documented abnormal objective signs of mental impairment came from Dr. Daugherty, a psychiatrist with whom Plaintiff had a five-year treatment relationship. (Pl.'s Br. at 9.) For claims filed before March 27, 2017, a treating physician's opinion on the nature and severity of a medical condition is entitled to controlling weight if it is supported by medical findings and consistent with other evidence in the record; if it is not, the ALJ must determine what weight to afford the treating physician opinion after considering regulatory factors including the length, nature, frequency, and extent of the physician's treatment relationship with the claimant, as well as the physician's specialty. 20 C.F.R. § 404.1527(c).

Here, however, despite citing repeatedly -- albeit, selectively -- to some of Dr. Daugherty's opinions, the ALJ erred by "ignor[ing] the relevant regulatory considerations in assessing the weight to give Dr. [Daugherty's] opinion about [Plaintiff's] limitations" and failing to specify what weight Dr. Daugherty's opinions did deserve. *Reinaas*, 953 F.3d at 465-66. This again tracks the ALJ opinion remanded in *Gerstner*, where the Seventh Circuit held it was error that the ALJ did not mention that the treating physician was a psychiatrist, that he was the only psychiatrist who treated the claimant and that the treatments occurred regularly for years. *Gerstner*, 879 F.3d at 263.

9

Instead of giving Dr. Daugherty's examination results the consideration they deserved, the ALJ "relied on the opinions of two non-examining state-retained physicians who did not have firsthand knowledge of how [Plaintiff's] symptoms could have worsened over time." *Reinaas*, 953 F.3d at 466. Moreover, the state agency opinions were issued in July and December 2015, and thus could not have considered Dr. Daugherty's treatment notes from 2016 and 2017 indicating further worsening of Plaintiff's condition.

Furthermore, the ALJ improperly discarded the opinions of Dr. Puntini and Ms. Kemp based on his mischaracterization of the cherry-picked medical evidence as "limited." Their opinions appear to be consistent with the severity of the findings in Dr. Daugherty's treatment notes.[9] The ALJ's failure to adequately address their opinions also requires remand.

## **CONCLUSION**

For the foregoing reasons, the Court grants Plaintiff's request for remand (D.E. 15) and denies the Commissioner's motion to affirm.[10] (D.E. 22.)

**ENTER:**

_[signature]_

**DATED: November 24, 2020**  **GABRIEL A. FUENTES**
**United States Magistrate Judge**

---

[9] In addition, the ALJ should not have discarded Ms. Kemp's opinion as that of an unaccepted medical source. "[M]edical sources who are not 'acceptable medical sources,' such as . . .clinical social workers . . . [and] therapists . . . are important and should be evaluated on key issues such as impairment severity and functional effects." Soc. Sec. Ruling 06-03P, 2006 WL 2329939 (Aug. 9, 2006).

[10] On remand, the ALJ should also revisit his assessment of Plaintiff's activities of daily living. "The ALJ's invocation of [Plaintiff's] activities of daily living to discount [his] testimony that [his] limitations are more than minimal also is problematic." *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016). Plaintiff "testified without contradiction, or rejection by the administrative law judge, that he does very little at home . . ." *Forsythe v. Colvin*, 813 F.3d 677, 679 (7th Cir. 2016). Here, the ALJ's description of Plaintiff's ADL's as "considerable" -- watching TV, taking care of his personal hygiene, living with his fiancée and child, and occasionally riding the bus -- is inaccurate.